**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Criminal Action No. 16-cr-00281-CMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES JASON WOOD,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS**

---

This matter is before the Court on Defendant Charles Jason Wood's Motion to Suppress. (Doc. # 26.) The Court held a half-day evidentiary hearing on the Motion on February 23, 2017. For the reasons described herein, Defendant's Motion to Suppress is granted.

## I. BACKGROUND

Defendant Wood has been charged by Indictment in this case for his alleged possession with the intent to distribute certain controlled substances, possession of a firearm in furtherance of a controlled substance crime, and for felon in possession of a firearm. (Doc. # 1.) In brief, Mr. Wood was arrested after police officers observed him cutting narcotics for distribution in his parked car. As recounted in greater detail below, officers were present to observe Mr. Wood only because they were tracking the vehicle he was driving, a 2001 White BMW ("2001 White BMW), with an electronic tracking

device that had been affixed pursuant to a search warrant that was tied to the previous driver of the vehicle, an individual named S.B. Mr. Wood challenges that search warrant as violative of his Fourth Amendment rights, and seeks to suppress the evidence gleaned from the search and seizure.

Detective Michael Garnett, a law enforcement officer with the Colorado Springs Police Department, testified during the suppression hearing that, as part of a drug investigation wholly unrelated to Mr. Wood, he sought and obtained a search warrant to track a 2001 White BMW, known to be driven by an individual named S.B. The probable cause statement underlying the warrant set forth information concerning S.B.'s distribution of drugs in the Colorado Springs area, and his use of the 2001 White BMW in connection with that activity. The warrant, obtained on May 27, 2016, authorized officers to attach an electronic tracking device to the 2001 White BMW and to monitor the vehicle via the electronic tracking device for a period of 60 days.

Detective Garnett further testified that, prior to affixing the tracking device to the 2001 White BMW, on June 1, June 2, and June 3, law enforcement officers conducted surveillance on S.B. and his residence, located at 1428 N. El Paso Street in Colorado Springs. On all three days, the 2001 White BMW was observed parked in the driveway. On all three days, S.B. was observed leaving his residence and driving away in the White BMW.

On June 7, 2016, at 10:30 p.m., an electronic tracking device was placed on the 2001 White BMW. At that time, the 2001 White BMW was parked in the driveway of S.B.'s residence. Because the tracking device was affixed to the 2001 White BMW on

June 7, the warrant authorized electronic tracking of the 2001 White BMW through August 6.

Detective Garnett testified that on June 28, 2016, in connection with their ongoing surveillance of the 2001 White BMW, officers observed that the chrome rims on the 2001 White BMW had been removes and a “For Sale” sign affixed to the passenger side window of the 2001 White BMW.

From the time the tracking device was affixed on June 7 until July 2, the data reveals that the 2001 White BMW was parked at 1428 N. El Paso St. – S.B.’s residence – on 23 out of 25 days. From July 3 on, the tracking data shows that the 2001 White BMW was parked at 210 N. Murray Boulevard in Colorado Springs, an address with no known connection to S.B., and the location we now know to be Mr. Wood’s residence.

Detective Garnett’s report indicates that on July 8, 2016, he sought to surveil the 2001 White BMW to “see if [his] previous suspect [i.e. S.B.] was still driving the vehicle or if it still had the same plate number.” Using the data provided by the electronic tracking device, Detective Garnett located the 2001 White BMW, which was in transit from the apartment parking lot at 210 N. Murray to the parking lot of a nearby high school. Detective Garnett located the 2001 Whtie BMW in the parking lot of the high school and drove by it. He testified that he noticed that there was no license plate attached to the 2001 White BMW and that a white male was sitting in driver’s seat; however, he was unable to determine whether the driver was S.B. or a different white male.

At that point, Detective Harris, a colleague accompanying Detective Garnett, exited their vehicle and walked past the parked BMW. Because the windows of the BMW were tinted, Detective Harris reported that he was also unable to identify the driver. He did, however, observe the driver cutting a large amount of narcotics for apparent distribution.[1]

Shortly thereafter, Detective Garnett observed the driver of the 2001 White BMW engage in what he believed to be a narcotics transaction with a person in a second car in the parking lot. A third officer, Officer Zahrobsky, was radioed, arrived at the scene, and approached the 2001 White BMW to make contact with the driver. After a brief scuffle and an attempt to flee, Mr. Wood was subdued and handcuffed. Near the 2001 White BMW, officers discovered a brown satchel containing cash and Ziploc bags. Inside the car, officers found controlled substances, firearms, and ammunition.

Of significance to the defendant's motion is that Detective Garnett, on cross examination, testified that he had doubts on July 8 that S.B. was still driving the vehicle, and it was because of those doubts that he decided to pull the tracking data and intercept the vehicle for visual surveillance.

S.B. was subpoenaed by the Defendant and testified that, at the request of his sister, L.B., who was the record title holder to the 2001 White BMW, he sold the 2001 White BMW to Mr. Wood on either July 2 or July 3, 2016, for $4000. On the day of the

[1] For reasons unknown to this Court, the Government failed to call Detective Harris to testify at the hearing, nor did it introduce into evidence his report recounting the events of July 8. These statements were gleaned from the testimony and report of Detective Garnett, and are accordingly hearsay. However, the Court does not rely on them for the ultimate decision, and they are included purely for the purpose of the factual narrative.

sale, he gave possession of the 2001 White BMW, including the title and keys, to Mr. Wood. He also testified that he removed the license plates and other personal items from the 2001 White BMW before he gave possession to Mr. Wood. Mr. Wood took the stand and confirmed that he paid S.B. $4,000 for the 2001 White BMW and took possession of the vehicle on July 2, 2016. He further testified that although the title to the 2001 White BMW was in the name of his ex-wife, she authorized him to drive it and he felt like it was his own vehicle when he was driving it.

## II. DISCUSSION

### A. Standing

"A district court cannot suppress evidence unless the movant proves that a search implicates Fourth Amendment interests." *United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995). To this end, "a defendant raising a Fourth Amendment challenge must first demonstrate that he has standing to object to the search." *United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009) (citing *United States v. Rubio–Rivera*, 917 F.2d 1271, 1274 (10th Cir. 1990)); *see also United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990) (quoting *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978)) (internal quotation marks omitted) (noting that "Fourth Amendment rights are personal and cannot be asserted vicariously" and that a non-owner driver did not have standing to challenge the search of a car). In determining whether Mr. Wood has standing to challenge the search warrant, this Court must examine two factors: "[1] whether the defendant manifested a subjective expectation of privacy in the area searched and [2] whether society would recognize that expectation as objectively reasonable." *Arango*,

912 F.2d at 445 (citation omitted). "The burden of showing standing to challenge a search and seizure rests with the defendant." *United States v. Martinez*, 983 F.2d 968, 972 (10th Cir. 1992) (citing Rakas, 439 U.S. at 130).

In deciding whether society would recognize an expectation of privacy as objectively reasonable, "we consider concepts of real or personal property law . . . ." *Arango*, 912 F.2d at 445. "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." Id. (quoting *Rakas*, 439 U.S. at 143 n. 12). Notably, however, mere physical possession of a vehicle and that vehicle's key, and the mere presence in a vehicle, is insufficient to establish a reasonable expectation of privacy. *See United States v. Obregon*, 748 F.2d 1371, 1374-75 (10th Cir. 1984) (holding that a driver's physical possession of keys and vehicle were insufficient to confer standing where the driver was not party to the rental car agreement); *United States v. Erwin*, 875 F.2d 268 (10th Cir. 1989) (defendant's mere possession of a vehicle's rear door key was insufficient to establish an objectively reasonable expectation of privacy in the vehicle); *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) ("the mere fact of presence in the car" is insufficient to meet the defendant's burden to prove standing). Though the movant "need not always come forward with legal documentation establishing that he lawfully possessed the area searched . . . [he] must at least state that he gained possession from the owner or someone with the authority to grant possession." *Arango*, 912 F.2d at 445 (citing *United States v. Miller*, 821 F.2d 546, 548 & n. 2 (11th Cir. 1987)) (emphasis added). The Tenth Circuit has held the following criteria "important[ ] though

not determinative" in determining whether a defendant has standing to assert a violation of his Fourth Amendment rights based on the search on objects inside a vehicle: "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." *United States v. Parada*, 577 F.3d 1275, 1280 (10th Cir. 2009) (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)) (emphasis added, internal quotation marks omitted).

After reviewing both S.B's and Mr. Wood's testimony and applying the framework set forth by the Tenth Circuit, this Court concludes that Mr. Wood, despite not being the legal owner of the 2001 White BMW, has standing to bring this Fourth Amendment challenge. Mr. Wood was the one who paid the $4,000 for the 2001 White BMW and his use of the vehicle transcends mere physical possession. He testified at the suppression hearing that his ex-wife, with whom he shares a child, authorized him to use the vehicle, and that he had done so freely during the short period of time between the time he purchased the 2001 White BMW on July 2 and his arrest on July 8. Moreover, he attested to a belief that the car was his own when he was driving it.

**B. The Merits**

The Fourth Amendment requires that warrants be supported by probable cause, as determined by a neutral and detached magistrate. U.S. Const. amend. IV; *United States v. Ramirez*, 63 F.3d 937, 941 (10th Cir. 1995). However, the probable cause analysis does not end with the issuance of the warrant, as the executing officers may

subsequently discover information that undermines probable cause and renders any search based on the warrant unconstitutional. *Maryland v. Garrison*, 480 U.S. 79, 86-87 (1987). "[O]nce the mistake is discovered, the government cannot use the authority of the warrant, or of the order, to conduct a search or interception that they know is unsupported by probable cause or is otherwise outside the scope of the statute or the Constitution." *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997).

In this case, the probable cause undergirding the warrant was founded exclusively in the illicit activities of S.B. On July 2, nearly halfway through the lifecycle of the warrant, S.B. relinquished the possessory interest he had in the vehicle when it was sold and, in doing so, vitiated the probable cause at the heart of the warrant. The Government does not dispute that electronic tracking continued after the sale of the vehicle. If the executing officers knew or had reason to know of the sale, their continued search was "unsupported by probable cause" and violative of the Fourth Amendment.

The Supreme Court's opinion in *Maryland v. Garrison* is instructive on this peculiar problem. In *Garrison*, officers obtained a warrant to search the third floor of an apartment complex, reasonably believing that one apartment comprised the entire floor. 480 U.S. at 80. In fact, there were two separate apartments, only one of which was occupied by the target of the warrant, McWebb. *Id.* During the execution of the warrant, officers unknowingly but reasonably searched Garrison's apartment and found drug paraphernalia. *Id.* at 81. Only after an officer answered the phone and the caller

asked for Garrison did the officers realize they might be in the wrong apartment. *Id.* at 81 n.2. At that point, the officers discontinued the search. *Id.* at 81.

The Supreme Court held that the warrant was valid when issued because officers reasonably believed that the entire third floor was occupied by McWebb. *Id.* at 85-86. But the validity of the warrant when issued was not dispositive of the constitutionality of the search of Garrison's apartment.

> If the officers **had known, or should have known,** that the third floor contained two apartments before they entered the living quarters on the third floor, and thus **had been aware of the error in the warrant**, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, **they were required to discontinue the search of [Garrison's] apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.**

*Id.* at 87 (emphasis added). Just as in Garrison, where the officers were required to "discontinue the search . . . as soon as they . . . were put on notice of the risk that they might be in" the wrong apartment, the officers in the instant case were required to stop tracking 2001 White BMW as soon as they were put on notice of the risk that S.B. was no longer in possession of the 2001 White BMW. Put differently, *Garrison* stands for the simple proposition that executing officers must discontinue a search when they are put on notice of the risk that there is a material defect in the underlying warrant.

What remains is to determine whether Officer Garnett was put on notice of the risk that the warrant was no longer supported by probable cause prior to his interception of Mr. Wood. If he knew, or should have known, that the car had changed hands, the

continued tracking of the 2001 White BMW and ultimate interception of Mr. Wood in that vehicle constitutes an unlawful search in violation of the Fourth Amendment.

Officer Garnett writes in his report of July 13 that, between the date he originally affixed the electronic tracking device and July 5, S.B. was observed driving the vehicle with a "For Sale" sign in the front passenger side window. The Court agrees with the Government that, alone, the presence of a "For Sale" sign is not the kind of notice that would require a police officer to halt an ongoing electronic tracking search. Indeed, the presence of the sign would suggest that the owner being tracked is still in possession of the vehicle, even if a sale might be imminent.

The evidence becomes problematic for the officers when viewed in conjunction with the electronic tracking data, which showed a dramatic departure in the behavior of the driver of the 2001 White BMW shortly after the "For Sale" sign was first observed. For the first twenty-five days of electronic tracking, the 2001 White BMW was returning to the residence of S.B. nearly every day. In early July, the data shows an abrupt change in the resting location of the vehicle, an address with no known association to S.B. Moreover, the vehicle never returns to S.B.'s residence, and S.B. is never again observed operating the vehicle.

The most telling evidence is the report and testimony of Detective Garnett himself. In his report of July 13, Detective Garnett writes that he "wanted to conduct surveillance" of the vehicle on July 8 "to see if my previous suspect was still driving the vehicle or if it still had the same plate number." His words strongly imply a suspicion that the vehicle had changed hands. Even if it were possible to construe those words

differently, Detective Garnett plainly admitted during the suppression hearing that he decided to surveil the 2001 White BMW on July 8 because he doubted S.B. was still operating the vehicle.

Taken together, the evidence and Detective Garnett's own admissions demonstrate beyond mere inference that he had "notice of the risk" that he was pursuing a warrant unsupported by probable cause. Indeed, it was his apparent expectation that a person other than S.B. was operating the vehicle, and he endeavored to identify that individual on July 8. After all, if the priority had been locating S.B., it would have been more efficacious to return to S.B.'s residence to determine his whereabouts. Tellingly, Detective Garnett testified that no efforts were made to observe S.B. at his residence or elsewhere after tracking data indicated the dramatic change in the location of the 2001 White BMW.

The Court recognizes that granting a motion to suppress in a case like this is an extraordinary remedy. However, it is the extraordinary duty of law enforcement officers to ensure that they pursue their important work with an appropriate regard for the foundational constitutional rights of those they police. Here, the executing officers had reason to believe that they were prosecuting a search without probable cause, and forged ahead anyway. For that reason, the Court must suppress.

## III. CONCLUSION

For the foregoing reasons, Defendant Charles Jason Wood's Motion to Suppress (Doc. # 26) is GRANTED.

DATED: February 25, 2017

BY THE COURT:

Christine M Arguello

CHRISTINE M. ARGUELLO
United States District Judge

o